*182 OPINION OF THE COURT
Lawrence H. Bernstein, J.
The instant indictment charges the defendant with the crimes of murder in the second degree, criminal possession of a weapon in the fourth degree and other related offenses. The accusations arise out of an incident which took place on Bikers Island where the defendant was incarcerated awaiting trial on an unrelated murder indictment and which resulted in the death of another inmate, one Luis Guzman.
The defendant now moves to dismiss the indictment as defective upon the ground that the District Attorney arbitrarily denied him a fair opportunity to be a witness before the Grand Jury which was considering the charges against him (CPL 210.20 [1] [c]; 210.35 [4]; 190.50 [5]). The motion raises the interesting issue as to what the obligations of a prosecutor are when confronted with a defendant’s request for the postponement of the proceedings to a time beyond the usual term of the Grand Jury’s existence.
Defense counsel made the application for a temporary suspension of the proceedings at the time of defendant’s scheduled Grand Jury appearance which was also the last day of the Grand Jury’s original term. The delay was sought after counsel was informed by his client that the latter had only several days before slashed his forearm in an apparent suicide attempt. Defendant was being treated for these injuries at Kings County Medical Center and was awaiting transfer to Bellevue Psychiatric Hospital. Moreover, defendant’s attorney also learned that defendant had undergone at least one previous psychiatric hospitalization.
In light of this information, defendant’s attorney believed it was his professional responsibility to have his own expert perform a psychological evaluation of defendant’s mental competence to knowingly and voluntarily execute a waiver of immunity before permitting him to offer any testimony before the Grand Jury. (CPL 190.50 [5] [b]; People v Scott, 124 Misc 2d 357.)
The District Attorney denied this application and the Grand Jury proceeded to vote a true bill against the defendant. The prosecutor justifies this unwillingness to accede to even a brief adjournment for this limited purpose primarily by reason of the administrative inconvenience associated with any such delay. Specifically, he argues that all the People’s witnesses had already completed their testimony before the Grand Jury; *183 that another previously scheduled appearance of the defendant had been canceled by defense counsel just the week before, on short notice for personal reasons (his wife was giving birth) and that, most importantly, this was the last day that this particular Grand Jury was to meet and their discharge from service was, therefore, imminent.
From this court’s perspective, the prosecutor in this case acted more out of pique and annoyance than from any reasoned consideration of the available alternatives. It seems even that he might have labored under the misapprehension that any further adjournment beyond the panel’s final day would have necessitated a complete withdrawal of the matter and a later re-presentation to another Grand Jury panel.
In any event, the prosecutor ignored the simple expedient available under CPL 190.15 for the extension of the term of an existing Grand Jury. CPL 190.15 (1) provides in pertinent part as follows: "A term of a superior court for which a grand jury has been impaneled remains in existence at least until and including the opening date of the next term of such court for which a grand jury has been designated. Upon such date, or within five days preceding it, the court may, upon declaration of both the grand jury and the district attorney that such grand jury has not yet completed or will be unable to complete certain business before it, extend the term of court and the existence of such grand jury to a specified future date, and may subsequently order further extensions for such purpose.” (Emphasis added.)
While this provision is most frequently utilized by the prosecution itself in the event it needs to keep a Grand Jury active to complete business already pending before it (see, e.g., Matter of Coonan v Roberts, 71 AD2d 563), there is no valid reason to limit its application to situations which benefit the District Attorney alone. The Grand Jury is an independent investigative body (NY Const, art I, § 6; People v Stern, 3 NY2d 658) and is mandated by law to hear testimony from a defendant who has an absolute right to appear as a witness before it as long as he properly serves upon the District Attorney a written notice making such request (CPL 190.50 [5] [a]; People v Callaway, 124 Misc 2d 168). Having complied with this statutory mandate, the defendant herein was entitled to far more equitable treatment than he received.
In fact, had the prosecutor joined with the Grand Jury foreman in seeking a court extension of the Grand Jury’s *184 term pursuant to CPL 190.15 that application would have, in all likelihood, been granted. This conclusion seems reasonable in light of the minimal prejudice inuring to the People from such a minor delay compared with the potential prejudice to the defendant from any unnecessary curtailment of his testimonial rights.
At worst for the People, the presentation would have been postponed for no more than several weeks to a scheduled date on which the particular Grand Jury would have reassembled for the sole purpose of hearing testimony from the defendant or not, depending on whether his expert found him mentally capable of waiving his 5th Amendment right against self-incrimination and presenting evidence in his own behalf. In either case, the delay would have been insignificant, and the Grand Jury would have immediately proceeded with their vote to indict or not. Moreover, in the interim period before the reconvening of the panel, the People would have been under no obligation to release the defendant nor have incurred any risk that he would abscond in view of his incarceration and remand status on the other pending indictment.
On the other hand, the reasons for accommodating the defendant were compelling. The record in this case in no way supports an inference that either the defendant or his counsel were acting in bad faith or engaging in any manipulative behavior. In fact, the contrary seems true: the defendant himself wanted to appear before the Grand Jury, even after his purported suicide attempt, but was dissuaded by his attorney’s insistence that he first undergo a mental examination. In this court’s view, such a psychiatric consultation was a necessary precautionary measure to protect the defendant’s rights and clearly appropriate given the defendant’s mental problems.
What is even more important is that had the defendant been a witness at the Grand Jury, his testimony could well have significantly impacted on the outcome of the Grand Jury’s deliberations. Based upon a review of the Grand Jury minutes, it is undisputed that Guzman was the initial aggressor in the sequence of events which led to his own demise. According to the testimony of every correction officer in a position to witness the incident, Guzman, while on inmate work duty in the hallway outside of the inmates’ showers, repeatedly struck the defendant Diaz with a mop wringer. The attack occurred without any apparent provocation. As a re- *185 suit, Diaz suffered a severe bloody head wound and blackened and swollen cheeks.
The crux of the matter as it bears upon defendant’s guilt relates to whether the defendant acted in self-defense when in response to Guzman’s assaultive behavior, Diaz stabbed him three times in the chest with a metal shank thereby causing his death. In fact, the issue was of such importance, that even in the absence of defendant’s own testimony with regard thereto, the prosecutor felt legally obliged to instruct the grand jurors with respect to the justification defense. (CPL 190.25 [6]; People v Valles, 62 NY2d 36.)
Certainly a reasonable view of the evidence at the Grand Jury is that it was only after the correction officers had disarmed Guzman and separated the combatants that Diaz reached into his nearby cell and retrieved the shank with which he killed Guzman. Such an interpretation of the flow of events would negate a viable self-defense inasmuch as it would be unnecessary for Diaz to protect himself after the threat of harm from Guzman was over.
However, it is by no means clear that this is the only conclusion inferable from the proof presented to the Grand Jury. In rapidly evolving and escalating events of this nature, there is often a thin line between a lawful defensive response and an overexcessive reactive use of force. An investigating police detective’s report, submitted as an appendix to defendant’s moving papers, supports defendant’s claim of self-defense. With the benefit of defendant’s testimony, the Grand Jury might well have reached the same conclusion, or at least voted to indict for a lesser charge, such as manslaughter in the first or second degree.
In conclusion, the court is now constrained to dismiss the instant indictment despite almost eight months having elapsed since the filing thereof. It reaches this result for the reasons heretofore elucidated, namely, the unnecessary prosecutorial refusal to seek an extension of the Grand Jury proceedings in the face of good cause by the defendant, and the prejudice to the defendant resulting from the potential probative value of his testimony compared with the insignificant impact on the People’s case. Even today, the indictment’s dismissal will result in only minor prejudice to the People, consisting of the necessity to recall the correction officers, inasmuch as these witnesses remain under the People’s control and the defendant himself continues to be incarcerated, *186 having been convicted of murder on the other homicide indictment.
Accordingly, defendant’s motion to dismiss is granted with leave to the People to re-present the matter to another Grand Jury.